UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT DOLEMBA, ON BEHALF OF PLAINTIFF AND A CLASS, | ) ) ) | |
| PLAINTIFF, | ) ) ) | No. 15 C 463 |
| v. | ) ) ) | Judge Thomas M. Durkin |
| ILLINOIS FARMERS INSURANCE COMPANY, D/B/A FARMERS INSURANCE, AND JAMES V. LOMBARDI INSURANCE AGENCY, INC., | ) ) ) ) | |
| DEFENDANTS. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scott Dolemba, on his own behalf and on behalf of a putative class, alleges that defendants Illinois Farmers Insurance Company ("Farmers") and James V. Lombardi Insurance Agency, Inc. ("Lombardi") made an unsolicited telephone call to his cellular telephone in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I), and the Illinois Consumer Fraud Act ("IFCA"), 815 ILCS 505/2 (Count II). *See* R. 31. The defendants have moved to dismiss the complaint on several grounds, including that the alleged call was neither an "advertisement" nor "telemarketing" within the meaning of the TCPA's implementing regulations. *See* 47 C.F.R. § 64.1200. For the following reasons, the Court grants the defendants' motion to dismiss.

**BACKGROUND**

On January 15, 2015, Dolemba received an automated telephone call that played a prerecorded message inviting him to attend a "town hall call offering a

1

business opportunity promoting the commercial availability of insurance, goods, intangibles and services." R. 31 ¶¶ 8-9. Although somewhat obscured by the complaint's artful drafting, the "business opportunity" was the opportunity to become a Farmers agent. *See id.* ¶ 12-13. A person who dials the number from which the call was sent gets a recorded message from Jim Lombardi, a Farmers agent and district manager, "referencing Farmers and inviting the recipient to attend a 'town hall' call offering a business opportunity involving the sale of insurance, goods, intangibles (including insurance, annuities, mutual funds, shopping services, and investment products) and services." *Id.* ¶ 10. Dolemba further alleges that the "business opportunity requires the new agent to acquire goods and services and expend money to [sic] or for the benefit of" Farmers. *Id.* ¶ 12.

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## ANALYSIS

The TCPA makes it unlawful for any person to make a call using an automatic telephone dialing system or a prerecorded voice to a cellular telephone. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA authorizes the Federal Communications Commission ("FCC") to exempt by rule or order "calls that are not made for a commercial purpose," and "such classes or categories of calls made for commercial purposes as the Commission determines": (1) "will not adversely affect the privacy rights that this section is intended to protect"; and (2) "do not include the transmission of any unsolicited advertisement." *Id.* at § 227(b)(2)(B). The FCC's implementing regulations make it unlawful to use an automatic telephone dialing system, or a prerecorded voice, to initiate a call to a cellular telephone "that includes or introduces an advertisement or constitutes telemarketing." 47 C.F.R. § 64.1200(a)(1)-(2).

## I. Whether Dolemba has Adequately Alleged that the Call Included or Introduced an Advertisement

The FCC's regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Whether a given call includes or introduces an "advertisement" depends on the call's content. *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

A call that seeks to hire individuals to sell a defendant's products may constitute an advertisement "if the individuals called are encouraged to purchase, rent, or invest in property, goods, or services, during or after the call." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14098-99 (July 3, 2003). Several district courts have held, however, that a mere "recruitment" call is not actionable. *See AL and PO Corp. v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 14 C 01893, 2014 WL 6999593, at *2 (N.D. Ill. Dec. 10, 2014) ("[D]rawing attention to a job opening does not equate to promoting the 'commercial availability or quality of any property, goods, or services'") (quoting 47 U.S.C. § 227(a)(5)); *Friedman v. Torchmark Corp.*, No. 12-CV-2837-IEG (BGS), 2013 WL 4102201, at *5 (S.D. Cal. Aug. 13, 2013) (similar); *Lutz App. Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa. 1994) (similar); *see also Reardon v. Uber Tech., Inc.*, Case No. 14-cv-05678-JST, — F. Supp. 3d —, 2015 WL 4451209, at *5 (N.D. Cal. July 19, 2015) ("[T]he texts from Uber seeking to recruit drivers were not attempts to promote a 'good' (its application) to those drivers, but

instead was an attempt to recruit drivers so that those potential drivers could provide services to riders.").

In *Friedman*, the plaintiff alleged that the defendant sent a prerecorded message to his residential telephone inviting him to contact the defendant "at a specific telephone number to attend a 'recruiting webinar' . . . wherein [plaintiff] could learn about [defendant's] products and services in order to sell said products and services to other Americans who are in need of health or similar insurance policies." 2013 WL 4102201, at *1. Individuals who completed the webinar received an email that "provide[d] the opportunity to enter into a contract with" the defendant. *Id*. The contract contained fees that the individual would have to pay to sell the defendant's products, in exchange for which the defendant would supply client lists. *Id*. The *Friedman* court held that the call offered the plaintiff the opportunity to "enter into an independent contractor relationship," and was "not part of an overall marketing campaign to sell access to a customer database." *Id*. at *6; *see also Lutz*, 859 F. Supp. at 181 ("A company's advertisement of available job opportunities within its ranks is not the advertisement of the commercial availability of property."). On that basis, the court dismissed the plaintiff's TCPA claim.

In *Med-Care*, the plaintiff received from the defendant a fax encouraging it to join the defendant's "affiliate/subcontractor program." *Id*. at *1. The fax went on to list "various supplies and goods for the recipient's patients," *id*., and to tout the benefits of joining the company's program:

> This program will enable you to, not only maintain your referral sources but, leverage our capacity and diversification of products and payer base to expand the products, and services you offer to a larger group of insurers. Med-Care has been in business since 1999. We currently service an active patient base of over 250,000 patients. We offer a multitude of products and services, all credentialed by The Joint Commission. All fulfillment is handled in house within our 40,000 sq. ft. shipping facility in Boca Raton FL . . . . Subcontracting agreements can be a lucrative method for smaller providers to maintain and enlarge their referral sources and increase your footprint by affiliating with a national organization. You will be able to provide a wide variety of quality products and services to current and future patients.

*Id.* The *Med-Care* court agreed with *Friedman* and *Lutz* that a "barebones 'help wanted' notice and an open-ended invitation to attend a webinar, on their own, do not promote any property, goods, or services." *Id*. at *3. It held that those cases were distinguishable, however, because the defendant's fax "trumpeted" the company's "wide variety of quality products," and "specifically listed twelve separate examples." *Id*.

Dolemba argues that the defendants' call is "more akin to" the calls at issue in *Brodsky v. HumanaDental Insurance Company*, No. 10 C 3233, 2014 WL 2780089 (N.D. Ill. June 12, 2014) (Durkin, J.). In *Brodsky*, the plaintiff—a "wholesaler of insurance"—received a fax from the defendant promoting the company's insurance products. *Id*. at *2. The fax invited the plaintiff to "[e]nhance your clients' benefits with dental and vision," and listed the attractive features of the defendant's "portfolio of specialty benefits products." *Id*. It also stated that the defendant had "made it easier than ever for [your clients] *and you to do business with us*, providing a single source for a quote, application, enrollment and bill." *Id*. (emphasis added). In denying the defendant's summary judgment motion, the Court held that a

6

reasonable jury could find that the fax "contained a sales pitch," and rejected the defendant's argument that the fax was merely "informational." *Id*. at *7. Dolemba also cites *Green v. Time Insurance Company*, which held that the plaintiff's allegation that he received a fax similar to the faxes at issue in *Brodsky* and *Med-Care* stated a claim for relief under the TCPA. 629 F. Supp. 2d 834, 835 (N.D. Ill. 2009) ("The Direct General Agent contract is by far the most lucrative contract available when contracting with Assurant Health/Time Insurance . . . .We're an A rated company that's been doing business for over 115 years. Our underwriting is second to none . . . ."); *see also Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 489360, at *7 n. 5 (N.D. Ill. Feb. 20, 2008) ("While Med1 does not list any prices on its forms, it does claim to pay 'TOP DOLLAR' for used medical equipment, describes its company as 'a better way to buy medical equipment,' and urges recipients to 'Call us!' or visit its website.").

As alleged in the complaint, the defendants' call does not serve the "dual purpose" of recruitment *and* promotion. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. at 14098-99. The call invited Dolemba to attend a "town hall call offering a business opportunity promoting the commercial availability of insurance, goods, intangibles and services." R. 31 ¶ 9. This allegation is virtually indistinguishable from the plaintiff's allegation in *Friedman*. The fact that the call informed Dolemba *what* he would be selling ("insurance"), without more, does not make the call an advertisement. Dolemba's allegations that the call promoted the defendants' insurance products

7

merely parrot the regulation's language, *see* R. 31 ¶¶ 9-10, 13, or else are too vague to provide adequate notice of his claim. *See id.* ¶ 12 ("The business opportunity requires the new agent to acquire goods and services and expend money to [sic] or for the benefit of Illinois Farmers Insurance Company.").

Dolemba has not adequately alleged that the call he received included or introduced an "advertisement" as the FCC's regulations define that term.

## II. Whether Dolemba Has Adequately Alleged that the Call Constituted Telemarketing

The TCPA's implementing regulations define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The "telemarketing" inquiry focuses on the purpose of the call, rather than its content. *See Golan*, 788 F.3d at 820. The TCPA does not "'require an explicit mention of a good, product or service,' where the implication of an improper purpose is 'clear from the context.'" *Id.* (quoting *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

In *Golan*, a telemarketing company retained Mike Huckabee to read a scripted, prerecorded call purporting to be a "survey" about a movie that the company had been hired to promote:

> Hello, this is Governor Mike Huckabee, with a 45–second survey. Do you believe in American freedom and liberty? ... Would you, like me, Mike Huckabee, like to see Hollywood respect and promote traditional American values? I am an enthusiastic supporter of a new movie called Last Ounce of Courage. It is a film about faith, freedom, and taking a stand for American values. May I tell you more about why I recommend that you ... see the movie Last Ounce of Courage?

8

*Id.* at 817. If the consumer said "yes," then the call would proceed to the script's next segment. *Id.* ("Thank you for your interest. Last Ounce of Courage opens in theaters on Friday, September 14, [2012] . . . ."). Recipients who did not answer the call received the following voicemail message: "Liberty. This is a public survey call. We may call back later." *Id.* The plaintiffs, who did not answer the call and received only the truncated message, filed a TCPA claim against the defendants on their own behalf and on behalf of a class that included consumers who heard some or all of the scripted promotion. *Id.* at 817-18. The Eighth Circuit held that the short voicemail message was not an "advertisement" because it "did not mention property, goods, or services." *Id.* at 819. But it held that the message was "telemarketing" because the *purpose* of the call was to encourage consumers to purchase tickets to see the movie. *Id.* at 820 ("Here, the context of the calls indicates that they were initiated for the purpose of promoting the Last Ounce of Courage.").

In *Chesbro v. Best Buy Stores, L.P.*, the defendant sent the plaintiff a prerecorded message informing him that his "Best Buy Reward Zone" certificates would expire soon. 705 F.3d at 916. It later sent a second prerecorded message to the plaintiff telling him about changes to the Reward Zone program, and encouraging him to "go to MyRewardZone.com for details and to update your membership." *Id.* The Ninth Circuit rejected Best Buy's argument that the calls were "purely informational":

> We approach the problem with a measure of common sense. The robot-calls urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the RZP, and

> thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy. Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context.

*Id.* at 918.

By contrast, the *Friedman* court held that the defendant's faxes were not "telephone solicitations"[1] because they did not encourage the plaintiff to "invest money in [the defendant's] brokerage services." 2013 WL 4102201, at *6. Rather, "the messages were intended to inform [the plaintiff] of the opportunity to enter into an independent contract position with" the defendant. *Id.*

This case is more similar to *Friedman* than it is to *Golan* or *Chesbro*. The defendants' call invited Dolemba to participate in a "town hall call" during which he would learn about becoming a Farmers insurance agent. Like *Friedman*, and unlike *Chesbro*, the call did not explicitly *or implicitly* encourage him to purchase, or "invest" in, any property, goods, or services. And unlike *Golan*, Dolemba has not alleged facts indicating that the defendants' recruiting call was part of a larger telemarketing promotion.

---

[1] The version of the implementing regulations in effect when the court decided *Friedman* exempted calls made for a commercial purpose that did "not include or introduce an unsolicited advertisement or constitute telephone solicitation." *See* 47 C.F.R. § 64.1200(a)(2)(iii) (effective until Oct. 16, 2013). The current version of subsection (a)(2) substitutes "telemarketing" for "telephone solicitation." *See id.* at § 64.1200(a)(2) (effective Oct. 16, 2013). It does not appear that this amendment affected the substance of the regulation.

Dolemba has not adequately alleged that the call he received constituted "telemarketing" as the TCPA defines that term.[2]

## III. The Dismissal is Without Prejudice

The Court declines at this time to dismiss Dolemba's TCPA claim with prejudice. *See* R. 33 at 2 (seeking dismissal with prejudice). Dolemba voluntarily amended his complaint in response to the defendants' original motion to dismiss. *See* R. 29. With the benefit of the Court's ruling, Dolemba may be able to plead sufficient facts to state a plausible claim for relief.

## CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion to dismiss, R. 32. The Court dismisses Dolemba's TCPA claim without prejudice for failure to state a claim for relief. The Court declines at this time to address the parties' arguments regarding Dolemba's ICFA claim. *See Winfield v. Mercy Hosp. and Med. Ctr.*, 591 Fed. Appx. 518, 520 (7th Cir. Feb. 17, 2015) ("A district court may decline to exercise supplemental jurisdiction, and the presumption is that the court will do so if all federal claims have been dismissed before trial."). If Dolemba believes that he can plead facts sufficient to overcome the deficiencies the Court has identified, then he may file an amended complaint by August 31, 2015. If he does not file a second amended complaint by that date, the Court will enter an order dismissing his TCPA claim with prejudice and relinquishing supplemental jurisdiction over his ICFA claim. If Dolemba does file a second amended complaint,

---

[2] In light of the Court's ruling, it is unnecessary to address whether Farmers may be held vicariously liable for Lombardi's actions. *See* R. 33 at 10.

11

the Court will hold a status hearing on September 3, 2015 at 9:00 a.m. The status hearing currently scheduled for August 12, 2015 is stricken.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: August 10, 2015