UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT DOLEMBA, ON BEHALF OF PLAINTIFF AND A CLASS, PLAINTIFF, v. ILLINOIS FARMERS INSURANCE COMPANY, AND JAMES V. LOMBARDI INSURANCE AGENCY, INC., DEFENDANTS. | No. 15 C 463<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Defendant Illinois Farmers Insurance Company ("Farmers") moves this Court to dismiss Plaintiff Scott Dolemba's Second Amended Complaint ("SAC"), R. 42, which alleges that Farmers violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, under an agency theory of vicarious liability. R. 45. Defendant James V. Lombardi Insurance Agency, Inc. ("the Lombardi Agency"), the "agent" against whom the TCPA and ICFA violations are alleged directly, joins the motion. R. 47; R. 52. For the reasons that follow, Defendants' motions are granted in part and denied in part.

**Background**

This is the second time the Court has passed on the adequacy of the complaint in this matter. The previously dismissed First Amended Complaint

1

("FAC") alleged that Dolemba received a call to his cellular phone from the Lombardi Agency, a registered Farmers insurance agent. R. 31. The FAC alleged that the call played a pre-recorded message inviting Dolemba to participate in a "town hall" teleconference about the opportunity to become a Farmers insurance agent. *See id.* The FAC asserted a claim under § 227(b) of the TCPA, which prohibits robocalls using a prerecorded voice. *Id.* Exempted from this prohibition by FCC implementing regulations, however, are certain commercial calls that do not "include[ ] or introduce[ ] an advertisement or constitute[ ] telemarketing," 47 C.F.R. § 64.1200(a)(1)-(2). Finding that the call, as alleged, was merely a recruitment call and that its purpose was not to promote or encourage the sale of Farmers' products or services, the Court held that the exemption applied and that Dolemba had failed to state a claim upon which relief could be granted. R. 41, 2015 WL 4727331, at *4-5 (N.D. Ill. Aug. 10, 2015). Dolemba was granted leave to replead if he believed he could assert facts sufficient to overcome the deficiencies identified by the Court. *Id.* at *5.

Dolemba timely filed the SAC, which adds essentially one allegation (though the allegation spans three paragraphs and derives from the content of two exhibits). *See* R. 42 ¶¶ 12-14, Exs. D-E. In addition to the facts set forth in the FAC, Dolemba now alleges that had he attended the town hall teleconference referenced in Lombardi's pre-recorded message, and had he acted on the opportunity to become a Farmers insurance agent as presented, then he would have been required to make a significant investment in the upstart of a business, including costs and expenditures

2

that would directly benefit Farmers' business. R. 42 ¶ 12.[1] Dolemba bases these allegations not on the content of Lombardi's recorded telephone message, but rather on a "Reserve Agent Getting Started Guide" he obtained from a registered Farmers agent in San Antonio, Texas (Ex. D) and from the terms of a form "Agent Appointment Agreement," (Ex. E) which Dolemba alleges to be "similar [to the] agreements . . . in effect trough [sic] the present," *id.* ¶ 14.

Before the Court could rule on Defendants' motions to dismiss the SAC, the Lombardi Agency moved to stay the case pending the Supreme Court's decision in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (Apr. 27, 2015). R. 54. The Lombardi Agency argued that a stay was appropriate given *Spokeo's* potential impact on standing for plaintiffs who, like Dolemba, assert statutory violations but no out-of-pocket economic harm. R. 55. The Court granted the Lombardi Agency's motion and instructed the parties that once a decision in *Spokeo* issued, they were to move the Court to lift the stay and proceed in a manner consistent with the ruling. R. 60.

---

[1] Specifically, Dolemba alleges that were he or other recipients of the recorded message to become Farmers insurance agents, they would have to (a) obtain Farmers insurance for their own use ("both personal insurance and an errors and omissions policy"); (b) travel and attend trainings, meetings and events; (c) obtain insurance and securities licenses and complete coursework necessary for licensure; (d) purchase literature for training purposes; (e) purchase leads for business solicitation purposes and engage in advertising, including mass mailing and telemarketing to sell Farmers insurance products; (f) secure office space and hire support staff; (g) obtain computers, telephone lines, and business cards; (h) purchase promotional gifts and materials ("keychains, mugs[,] calendars[,] magnets, etc. with Farmers' logo"); and (i) provide Farmers with a fidelity bond. *See* R. 42 ¶ 12.

3

The Supreme Court decided *Spokeo* several months ago, 136 S. Ct 1540 (2016), but none of the parties have moved the Court to lift the stay and proceed in this matter. The Court therefore does so now on its own motion, first evaluating whether Dolemba has standing under *Spokeo*, and then deciding whether the additional facts set forth in the SAC cure the defects identified in the Court's previous ruling.

**Discussion**

I. <u>Standing and Subject Matter Jurisdiction</u>

"Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)). The first of these three elements is that the plaintiff must have suffered an "'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The injury must also be "fairly traceable to the challenged action of the defendant" and redressable through judicial action. *Id.*

In May 2016, the Supreme Court decided *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In *Spokeo*, the Supreme Court explained that to establish Article III standing, a plaintiff must show not only that he or she was personally affected by the alleged wrongdoing, i.e., a "particularized" injury, but also that he or she suffered a "concrete" injury—i.e., a "*de facto*" or "real" injury that "actually exist[s]."

4

136 S. Ct. at 1548. The *Spokeo* Court explained that "'[c]oncrete' is not . . . necessarily synonymous with 'tangible,'" observing that while "tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549. To identify whether an intangible injury is concrete, "both history and the judgment of Congress play important roles." *Id.* at 1549. The *Spokeo* Court explained:

> [I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.

*Id.* (citations omitted). In other words, the *Spokeo* Court instructed that while a bare procedural statutory violation is insufficient to confer standing, a statutory violation that invokes the type of intangible injury recognized at common law or elevated by Congress to *de facto* status is sufficient in itself to satisfy Article III. *Id.* at 1549-50.

Another court in this district recently applied this guidance to decide whether a plaintiff seeking only statutory damages for a violation of the TCPA had alleged an injury sufficiently concrete to satisfy Article III. *Aranda v. Caribbean Cruise Line, Inc.*, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016). In so doing, the court observed:

> [The TCPA] establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive. Both history and the judgment of Congress suggest that violation of this substantive right is sufficient to constitute a concrete, *de facto* injury. As

5

> other courts have observed, American and English courts have long heard cases in which plaintiffs alleged that defendants affirmatively directed their conduct at plaintiffs to invade their privacy and disturb their solitude.

*Id.* at *5-6, citing, among other post-*Spokeo* opinions, *Mey v. Got Warranty, Inc.*, 2016 WL 3645195, at *3 (N.D.W.V. June 30, 2016) ("[T]he TCPA can be seen as merely liberalizing and codifying the application of [a] common law tort to a particularly invasive type of unwanted telephone call."). This Court agrees with this reasoning, and so holds that on the face of the complaint,[2] Dolemba has alleged a particularized and concrete injury sufficient to satisfy Article III and confer subject matter jurisdiction on this Court.

## II. Adequacy of the Pleadings

"The question of whether a plaintiff has standing to bring suit . . . is separate from the question of whether a plaintiff has a cause of action, and [ ] constitutional standing may exist even where a cause of action does not." *Spector*, 2016 WL 1270493, at *9, quoting *Davis v. Passman*, 442 U.S. 228, 239 n. 18 (1979). To establish a cause of action, a plaintiff must provide "a short and plain statement of the claim showing that [he] is entitled to relief" that is sufficient to provide the defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting Fed. R. Civ. P. 8(a)(2). The complaint

---

[2] "In determining whether there is standing, the court assumes *arguendo* that [the plaintiff] has pleaded and could prove a violation of substantive law, and asks only whether it has alleged a concrete injury and a sufficient causal relationship between the injury and the violation." *Spector v. Mondelez Int'l, Inc.*, 2016 WL 1270493, at *9 (N.D. Ill. Mar. 31, 2016), citing *FMC Corp. v. Boesky*, 852 F.2d 981, 995 (7th Cir. 1988) (Ripple, J., concurring).

6

must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *See id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

A. <u>Landline Calls</u>

The parties agree that the TCPA and its implementing regulations prohibit the initiation of "any [commercial] telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party," *unless* that call "does not include or introduce an advertisement or constitute telemarketing." 47 U.S.C. § 227(b)(1)(B), 47 C.F.R. § 64.1200(a)(3)(iii). As explained in the Court's order dismissing the FAC, whether a call "include[s] or introduce[s] an advertisement" depends on its content, and whether it "constitute[s] telemarketing" depends on its purpose. 2015 WL 4727331, at *2, 4, citing *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015). The Court incorporates its analysis of the facts alleged in the FAC here, 2015 WL 4727331, at *2-5, and considers only whether the newly pled facts are sufficient to remove Lombardi's prerecorded message from the "recruitment" or "help wanted" exemption carved out by the implementing regulations. *See, e.g., Friedman v. Torchmark Corp.,* 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013) (finding no

7

TCPA violation where the prerecorded message at issue did not promote or encourage the sale of the defendant's products or sales contacts database but rather informed recipients of the opportunity to enter into an independent contractor position as a sales agent for the defendant); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 70 FR 19330-01, at *19331-32 (Apr. 13, 2005) (explaining that "a recruiter calling to discuss potential employment . . . with a consumer is not making a 'telephone solicitation' to the extent the called party will not be asked during or after the call to purchase, rent or invest in property, goods or services).

Plaintiff asserts that the various expenses now detailed in the SAC are sufficient to support his claim that the prerecorded message was more than just a recruitment effort, and instead was a prohibited commercial robocall intended to promote Farmers' insurance products and services and to encourage the recipient to make investments for Farmers' benefit. R. 49 at 8. Plaintiff argues:

> [The prerecorded message] invites the recipient to participate in further communication that promotes the commercial availability or quality of property, goods, or services. The participant is both informed of the availability of goods or services (insurance) and is offered a business proposal involving *investment in* a Farmers agency. Farmers' business proposal requires the new agent to acquire goods and services and expend money to or for the benefit of Farmers. In fact, the Farmers business proposal plainly requires expenditure of money on a place of business and marketing of Farmers' products.

8

*Id.* at 11 (emphasis in original). Defendants respond that "[t]he new allegations in the SAC refer to hypothetical steps that an individual might take to be an independent contractor insurance agent." R. 46 at 8.

The Court agrees with Defendants, and furthermore notes that the new allegations are several steps removed from the robocall, which, itself, contains only an invitation to attend an informational teleconference about a business opportunity. The types of "investments" Dolemba relies on to save his § 227(b)(1)(B) claim would come to pass only if Dolemba (or another recipient of the alleged robocall) (1) listened to the prerecorded message, (2) attended the "town hall" teleconference, and (3) chose based on the information presented at the "town hall" to pursue the proposed business opportunity. Even then, the newly pled "investments" are hardly predestined; to incur them, the call recipients would have to follow-through with obtaining all necessary training, licensures and certificates and would then need to contract with Farmers to sell their insurance products. At some point in this chain of events, Farmers insurance products and services would indeed be promoted and marketed for sale, but the speculative nature of the investments and their attenuated relationship to the receipt of the alleged robocall are insufficient to overcome the defects in the FAC. The Court's evaluation of the message as an exempt recruitment call stands. Plaintiff's TCPA claims for calls to landlines are now dismissed with prejudice.

B. Cellular Calls

In Plaintiff's response, he points out that unlike liability for commercial robocalls to landlines under § 227(b)(1)(B), liability for robocalls to cellular phones under § 227(b)(1)(A)(iii) does not depend on the content of calls. R. 49 at 5. With only one exception not relevant now, commercial robocalls to cellular phones require either the written or oral consent of wireless consumers. *See Aranda v. Caribbean Cruise Line, Inc.,* 2016 WL 1555576, at *6-7 (N.D. Ill. Apr. 18, 2016) (examining this incongruity and entering summary judgment for a cellular phone class, while finding a question of fact as to whether the same calls are exempt from the TCPA under the FCC's implementing regulations when made to residential landlines). Defendants concede this point, and acknowledge that Dolemba has stated the necessary elements of a direct claim for liability under § 227(b)(1)(A)(iii) against the Lombardi Agency. R. 51 at 4; R. 52 ¶ 2.

Farmers concedes, as it must, that a principal may be held vicariously liable for the acts of its agent under the TCPA. R. 51 at 9; *see also In re Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574, 6584 (2013) (noting that defendants can be held vicariously liable for TCPA violations by its representatives "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification"). Farmers also concedes that a plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency. *Id.*; *see also Mauer v. Am. Intercontinental Univ., Inc.*, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016) ("Agency is typically a factual issue, with

10

the plaintiff at the pleading stage only required to allege a factual basis that gives rise to an inference of agency relationship through the use of generalized as opposed to evidentiary facts."). What Farmers disputes, however, "is that the SAC contains any well-pleaded factual allegations to support the inference that the Lombardi Agency was acting as Farmers' common-law agent when it placed a recruiting call to Dolemba's cell phone." *Id.* The Court disagrees.

The SAC alleges that Dolemba received a call on his cellular phone that "played a recording inviting the recipient to attend a 'town hall' call offering a business opportunity" as a Farmers insurance agent. R. 42 ¶¶ 8-9. According to the SAC, one who dials the number from which the call was placed "gets a recorded message from Jim Lombardi" that "referenc[es] Farmers" and invites the caller to attend the informational teleconference. *Id.* ¶ 10. Dolemba alleges that the business opportunity referenced in the recording must be offered by Farmers because "Farmers Insurance, not Lombardi, has to appoint new Farmers Insurance agents," and because "[i]t involves the prospect of creating a Farmers Insurance agency business for the benefit of Farmers." *Id.* ¶ 11.

Attached as Exhibit B to the SAC is a screenshot from the "Agency Opportunities" tab of Farmers' corporate website. R. 42-1 at 4. This particular page features a picture of Lombardi, who is identified in the upper right-hand corner of the screen as "District Manager" in Burr Ridge, Illinois. In a box labeled, "Message From the District Manager," it reads: "Welcome to District 33! As District Manager, I'm motivated to promote our new and established agents by providing key business

11

resources, training, and guidance." *Id.* Beneath that box are options to request an appointment with Lombardi or view a calendar of upcoming events for current and prospective agents. Alongside Lombardi's personalized message, a box labeled "Why Farmers" reads, in part:

> For some, serving the community is enough. For others, it doesn't hurt when a job offers the occasional perk or incentive. At Farmers, agents have the flexibility to live life on their schedule, the chance to build a legacy, and countless opportunities to interact with their communities. When one of the largest insurance providers in the country has your back, the sky's the limit . . .

*Id.* By reference to Exhibit B, the SAC alleges that Farmers "holds James V. Lombardi Insurance Agency out as its authorized agent." R. 42 ¶ 16.

Exhibit C to the Complaint is a screenshot of Lombardi's LinkedIn profile, which catalogues the various positions Lombardi has held over his 30 year "career with Farmers Insurance Group." *Id.* at 6-9. Dolemba alleges that he "saw Exhibits B-C," R. 42 ¶ 17, though he does not specify whether he saw them before or after he received the alleged robocall. Still, Dolemba alleges that based on having viewed these webpages, he "reasonably believed that the call came from a representative of Farmers Insurance acting on behalf of Farmers Insurance, with its authority." *Id.* ¶ 18.

In summary, Dolemba plausibly alleges that the Lombardi agency is an authorized agent or representative of Farmers. He alleges that among the responsibilities Farmers holds Lombardi out as having is the recruitment and training of new insurance agents. Farmers makes a strong recruiting pitch to potential agents on its own website alongside a photo of Lombardi, setting forth

12

various "perks" of the job and indicating that Farmers "has [its agents'] back[s]". Dolemba alleges he saw this website. He also alleges that the prerecorded robocall expressly mentioned Farmers by name, and that when the number was dialed back, he heard another prerecorded message from Lombardi discussing the Farmers' informational event. Finally, Dolemba alleges that even if Farmers did not direct Lombardi to make the call or represent to Dolemba (and others) that Lombardi was authorized to do so on its behalf, it nevertheless accepted the benefits of Lombardi's recruitment efforts. Of course, these facts may not be sufficient to *prove* any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery. *See, e.g., Fitzhenry v. Career Educ. Corp.*, 2016 WL 792312, at * (N.D. Ill. Mar. 1, 2016) (denying a motion to dismiss a claim for vicarious liability under the TCPA when the facts alleged in the complaint, construed in the light most favorable to the plaintiff, suggested a close corporate relationship between the calling entity and the defendant such that the call could plausibly be attributable to the defendant).

Farmers argues that the "SAC alleges no facts suggesting that Farmers instructed Lombardi to make the call to Dolemba, had any authority over the time, means and manner of Lombardi's recruitment activities, or had the ability to issue . . . instructions to Lombardi on these subjects." R. 46 at 14. But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the

Lombardi Agency are exclusively within the Defendants' custody and control. Dolemba is not required to plead specific evidence to which he is not privy in his complaint.[3] *See Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (explaining that consumers may acquire evidence of an alleged agency relationship through discovery if they do not have independent access to such information); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d, 765, 776 (N.D. Ill. 2014) (similar). Dolemba has sufficiently put Farmers on notice of his claim of vicarious liability, and the Court finds that he has alleged facts sufficient to make the claim plausible on its face. Defendants' motions to dismiss the TCPA claims alleged under § 227(b)(1)(A)(iii) are denied.

    C.    <u>Illinois Consumer Fraud Act</u>

The ICFA is "intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices" and is "liberally construed to effectuate its purpose." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The elements of an ICFA claim are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). "A plaintiff may allege that conduct is unfair . . . without alleging that the conduct is

---

[3]     Moreover, whether Farmers instructed Lombardi to make the call or exercised control over his recruitment efforts is not relevant to every theory by which Farmers could be held vicariously liable. *See Glen Ellyn Pharmacy v. Promius Pharma, LLC,* 2009 WL 2973046, at *7 (N.D. Ill. Sept. 11, 2009).

14

deceptive." *Id.* at 935. Unfairness is evaluated using three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 961. A "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id. Nelson v. Ashford Univ., LLC*, No. 16-CV-3491, 2016 WL 4530325, at *2 (N.D. Ill. Aug. 29, 2016).

The first *Robinson* factor is the only one satisfied here. The Court has already found that Dolemba adequately stated a claim under the TCPA. An alleged violation of federal law, which must be taken as true for the purposes of this analysis, offends public policy. *See Nelson v. Ashford Univ., LLC*, 2016 WL 4530325, at *2 (N.D. Ill. Aug. 29, 2016); *see also Mussat v. Power Liens, LLC*, 2014 WL 3610991, at *3 (N.D. Ill. Jul. 21, 2014) ("[T]here is little dispute that the alleged practice of sending unsolicited fax advertisement[s] offends public policy.") (collecting district court authority).

The second and third *Robinson* factors, however, are not met. "'[A] practice may be considered immoral, unethical, oppressive, or unscrupulous if it imposes a lack of meaningful choice or an unreasonable burden on the consumer.'" *Mussat*, 2014 WL 3610991, at *3, quoting *Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*, 633 F.Supp.2d 610, 616 (N.D. Ill. 2009). Dolemba may not have had a meaningful choice in receiving the unauthorized robocall to his cellular phone, but the transmission of a single prerecorded message to an unconsenting consumer is

not the type of oppressive practice penalized by the ICFA. *See id.* ("Power Liens' single, one-page fax cannot be said to burden Mussat to an oppressive level."). Nor has Dolemba alleged that the robocall caused him substantial injury. A practice causes substantial injury under the ICFA "if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers." *Id.*, citing *Stonecrafters,* 633 F.Supp.2d at 617. Moreover, to satisfy the pleading requirements of the ICFA, the harm or injury alleged must include or arise from actual economic damages that are more than *de minimis* or trifling in amount. *See id.* ("[o]ne or two sheets of paper, the minimal toner, and the few seconds of a person's time expended in response to the unsolicited fax do not amount to a substantial injury"); *Nelson*, 2016 WL 4530325, at *3 (citing authority for the proposition that non-economic damages are only compensable under the ICFA when they are part of a total award that includes actual monetary damages). Dolemba does not allege that he suffered more than trivial economic and non-economic damages, and seeks only statutory damages for the TCPA violation alleged. He has thus failed to allege a claim for relief under the ICFA, directly against the Lombardi Agency or derivatively against Farmers.

Because this is the first time the Court has addressed the adequacy of Dolemba's ICFA claim, it is dismissed now without prejudice. Dolemba may replead the claim in accordance with the instructions below.

## Conclusion

Defendants' motions [45] [47] [52] are granted in part and denied in part. Dolemba's TCPA claim concerning landline calls is dismissed with prejudice. His TCPA claim concerning cellular calls remains against the Lombardi Agency and against Farmers. The ICFA claim is dismissed without prejudice.

If Dolemba believes he can allege a viable ICFA claim, he should file a motion of no more than three pages for leave to amend the complaint by October 14, 2016. The motion should attach a proposed amended complaint and should explain how proposed amendment cures the deficiencies identified above. Defendants should not file a brief responding to the motion to amend unless the Court requests it. If no motion to amend is filed by October 14, 2016, the ICFA claim will be dismissed with prejudice. A status hearing in matter is scheduled for October 21, 2016 at 9:00 am.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 30, 2016